1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BIBI RUKHSANA HAYEE,

11            Plaintiff,                    No. 2:09-cv-02285 KJN

12        v.

13   MICHAEL J. ASTRUE,
14   Commissioner of Social Security,

15            Defendant.                    ORDER
                                    /
16

17            In her motion for summary judgment, plaintiff seeks judicial review of a final

18   decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's

19   applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act

20   ("Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act.[1]  (Pl.'s Mot. for

21   Summ. J. ("Pl.'s Motion"), Dkt. No. 22-1 at 1.)  First, plaintiff contends that the administrative

22   law judge ("ALJ") discounted the medical opinion of plaintiff's treating physician without

23   providing clear and convincing reasons for doing so.  (Pl.'s Motion at 7.)  As part of this

24

25            [1] This case was referred to the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to
     proceed before a United States Magistrate Judge.  (Dkt. Nos. 7, 13.)  This case was reassigned to
26   the undersigned by an order entered February 9, 2010.  (Dkt. No. 14.)

argument, plaintiff suggests that the ALJ erroneously failed to recontact that physician to answer

any "questions" the ALJ "may have had." (Id. at 10.)  Plaintiff's second argument echoes her

first: she contends that the ALJ improperly discounted the opinion of an examining physician,

also without clear and convincing reasons for doing so.  (Id. at 11.)  Third, as to the ALJ's

finding that plaintiff had the residual functional capacity ("RFC") to perform her past relevant

work of an in-home aide, plaintiff contends this finding was not based on substantial evidence

and that the ALJ failed to consider all of plaintiff's ailments and the "mental demands" of

plaintiff's past work.  (Id. at 14-16.)  Fourth, as to the ALJ's finding that plaintiff possessed the

RFC to perform "other" light, unskilled work in the national economy, plaintiff contends this

finding was not based on substantial evidence and was based on an "incomplete hypothetical"

given to the VE.  (Id. at 16.)

The Commissioner filed an opposition to plaintiff's motion and a cross-motion for

summary judgment.  (Def.'s Mot. for Summ. J. ("Def.'s Motion"), Dkt. No. 24.)  Plaintiff filed a

reply ("Pl.'s Reply") to the Commissioner's opposition and cross-motion for summary judgment.

(Pl.'s Reply, Dkt. No. 25.)

For the reasons stated below, the court denies plaintiff's motion for summary

judgment and grants the Commissioner's cross-motion for summary judgment.

I.      BACKGROUND[2]

Plaintiff, a female with a second grade education, was 49-years-old when the ALJ

rendered the decision denying plaintiff's application for disability benefits.  (See Administrative

---

[2]  Because the parties are familiar with the factual background of this case, including
plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The
facts related to plaintiff's impairments and medical history will be addressed only insofar as they
are relevant the issues presented by the parties' respective motions.

Additionally, to the extent the undersigned uses the present tense in referring to or
describing plaintiff's alleged conditions or functional abilities, or the ALJ's or Appeals Council's
characterizations of the same, the undersigned clarifies that such references are to plaintiff's
conditions or functional abilities at the time of the ALJ's or Appeals Council's decision, unless
otherwise indicated.

Record ("AR") 69.)  Plaintiff was unable to speak English and could read in English just "a little bit."  (Id.)  In terms of previous employment, plaintiff had worked as an in-home health aide for nearly eight years, from 1998 through June 2006.  (AR 70; 108; 113.)  Plaintiff reported that she became disabled on June 23, 2006.  (AR 55; 107-08.)

Several medical opinions were rendered regarding plaintiff's medical issues and limitations.  Plaintiff's treating physician, Dr. Gabriel K. Tanson, opined that plaintiff could not perform sustained work activities due in part to chronic low back pain, arthritis, spondylolysis,[3] fibromyalgia, chronic fatigue, and diabetes mellitus.  (AR 185-86.)  Dr. Tanson also assessed plaintiff's ability to engage in work-related activities.  He opined that plaintiff could: (1) manage her own financial matters; (2) only occasionally lift and carry 10 pounds; (3) use both right and left hands often, but could only occasionally engage in simple grasping and fine manipulation with the right hand; and (4) sit for two hours, stand for two hours, and walk for two hours, in an 8-hour workday, engaging in each of these activities for only one hour at a time.  (AR 185-87.)  Dr. Tanson opined that plaintiff's mental and emotional capabilities were affected by her physical impairment.  (AR 188-89.)

An examining physician, Dr. Les P. Kalman, diagnosed plaintiff with adjustment disorder, depression, diabetes mellitus, hypertension, chronic fatigue, and pain.  (AR 193.)  He opined that plaintiff was capable of caring for her own personal hygiene, but was not competent to manage her own funds.  (AR 193-94.)  Dr. Kalman further opined that plaintiff was mildly or moderately limited in a number of categories of mental functioning.[4]  (AR 196-98.)  Dr. Kalman

---

[3]  Spondylolysis has been defined as degeneration or deficient development of a portion of the vertebra.  Thomas Lathrop Stedman, Stedman's Medical Dictionary, 1813 (Lipincott, Williams & Wilkins, eds., 28th ed. 2006).

[4]  For example, Dr. Kalman opined that plaintiff would be mildly limited in her ability to understand and remember very short and simple repetitive instructions, to perform activities within a schedule, to sustain an ordinary routine without special supervision, and to interact appropriately with the general public or customers.  (AR 196-97.)  Dr. Kalman also opined that plaintiff was moderately limited in her ability to remember work-like procedures, understand and

1  opined that plaintiff's work-related mental limitations existed since 2005 and would cause

2  plaintiff to miss work more than three or four times per month.  (AR 199.)

3          A state-requested examining physician, Dr. Joseph M. Garfinkel, examined

4  plaintiff on August 29, 2006, at the request of the Department of Social Services ("DSS").  (AR

5  164-69.)  Dr. Garfinkel determined that plaintiff's range of motion of the neck, shoulders,

6  elbows, wrists, and hands were all within normal limits.  (AR 167.)  As to plaintiff's back pain,

7  Dr. Garfinkel found that plaintiff's range of motion was less than normal and that plaintiff

8  suffered from chronic low back pain, "most likely caused by lumbosacral strain and mild

9  otheoarthritis."  (AR 168.)  However, in contrast to Dr. Tanson's medical assessment, Dr.

10  Garfinkel found that, despite her back pain, plaintiff could nonetheless lift or carry 50 pounds

11  occasionally and could stand or walk for 6 hours in an 8-hour day.  (Id.)  Dr. Garfinkel also

12  opined that plaintiff's neurological examination was normal, noting that the motor, sensory,

13  reflexes and cranial nerve tests were intact and otherwise unremarkable.  (AR 167.)

14          A.      Procedural Background

15          On June 29, 2006, plaintiff applied for benefits and alleged a disability onset date

16  of June 23, 2006.  (AR 55.)  The Social Security Administration denied plaintiff's applications

17  both initially and upon reconsideration.  (AR 86-87.)  Plaintiff filed a request for a hearing and

18  the ALJ, Laura Havens, conducted a hearing regarding plaintiff's claims on September 13, 2007.

19  (AR 65-85.)  Plaintiff, who was represented by counsel at the hearing, testified at the hearing.  A

20  vocational expert ("VE") also  testified at the hearing.  (Id.)  A translator was present and

21  translated for plaintiff.  (Id.)

22          In a decision dated October 11, 2007, the ALJ determined that plaintiff was not

23  ////

24  ////

25  _____

26  remember detailed instructions, and to work in coordination with or proximity to others without
being unduly distracted by them.  (Id.)

4

1   disabled.[5]  (AR 24-32.)  In reliance on the VE's testimony, the ALJ also found that plaintiff was

2   capable of performing her past relevant work as it is performed in the national economy.  (AR

3   30.)  Additionally, and also in reliance on the VE's testimony, the ALJ found that plaintiff could

4   still perform other work, such as assembly work, sewing operator, and semi-conductor operator,

5   which are jobs that exist in significant number in the regional or national economy.  (AR 31.)

6   The ALJ's decision became the final decision of the Commissioner when the Appeals Council

7   denied plaintiff's request for review.  (AR 5.)  Plaintiff subsequently filed this action.

8        B.   Summary of the ALJ's Findings

9             The ALJ conducted the required five-step evaluation and concluded that plaintiff

10

11       [5] Disability Insurance Benefits are paid to disabled persons who have contributed to the
    Social Security program, 42 U.S.C. §§ 401 et seq.  Supplemental Security Income ("SSI") is paid

12   to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Under both provisions,
    disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to

13   "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
    1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  20 C.F.R. §§

14   423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The
    following summarizes the sequential evaluation:

15             Step one:  Is the claimant engaging in substantial gainful activity?
               If so, the claimant is found not disabled.  If not, proceed to step

16             two.

17             Step two:  Does the claimant have a "severe" impairment?  If so,
               proceed to step three.  If not, then a finding of not disabled is

18             appropriate.

19             Step three:  Does the claimant's impairment or combination of
               impairments meet or equal an impairment listed in 20 C.F.R., Pt.

20             404, Subpt. P, App.1?  If so, the claimant is automatically
               determined disabled.  If not, proceed to step four.

21
               Step four:  Is the claimant capable of performing his past work?  If

22             so, the claimant is not disabled.  If not, proceed to step five.

23             Step five:  Does the claimant have the residual functional capacity
               to perform any other work?  If so, the claimant is not disabled.  If

24             not, the claimant is disabled.

25   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in
    the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The

26   Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1    was not disabled within the meaning of the Act.  (AR 25, 27.)  At step one, the ALJ concluded

2    that plaintiff had not engaged in substantial gainful activity since June 23, 2006, the alleged date

3    of onset.  (AR 26.)  At step two, the ALJ concluded that plaintiff had the following "severe"

4    impairments: diabetes, obesity, fibromyalgia, and arthritis, plus "not severe" impairments of mild

5    degenerative disc disease and depression.  (Id.)  At step three, the ALJ determined that plaintiff's

6    impairments did not meet or medically equal any impairment listed in the applicable regulations.

7    (AR 27.)

8           Between steps three and four, the ALJ assessed plaintiff's residual functional

9    capacity ("RFC") as follows:

10          After careful consideration of the entire record, the undersigned
            finds that the claimant has the residual functional capacity to
11          perform a wide range of medium work,[6] with exertional limitations
            of sitting and standing for up to 6 hours in an eight-hour day, walk
12          for up to 6 hours in an eight-hour day, with an option to change
            positions and alternate between sitting and standing every 2 hours.
13          She has postural limitations restricting her to work requiring
            climbing, stooping, kneeling, crouching, and crawling only on an
14          occasional basis.

15   (Id.)  In assessing plaintiff's RFC, the ALJ found plaintiff's statements concerning the intensity,

16   persistence, and limiting effects of her symptoms to be "not entirely credible and inconsistent

17   with the medical evidence."  (AR 28.)  The ALJ also found that the physical and mental

18   limitations on plaintiff's ability to do work-related activities, as defined within an April 3, 2007

19   report by plaintiff's treating physician, Dr. Tanson (the "Tanson Report"), were conclusory

20   diagnoses that were contradicted by plaintiff's performing work-related activities during the

21   relevant time period, among other reasons.  (AR 29.)  Further, the ALJ gave "very little weight"

22
23          [6]  The applicable regulation, 20 C.F.R. § 416.967(c), defines "medium work" as follows:

24          (c) Medium work.  Medium work involves lifting no more than 50
            pounds at a time with frequent lifting or carrying of objects
25          weighing up to 25 pounds. If someone can do medium work, we
            determine that he or she can also do sedentary and light work.

26

1  to the August 4, 2007 psychiatric evaluation of the examining physician, Dr. Kalman (the

2  "Kalman Report"), finding that Dr. Kalman's opinions were largely based on plaintiff's less-

3  than-credible representations and that his "opinions are not supported by any testing, clinical or

4  other objective findings." (AR 30.)  Finally, the ALJ gave "significantly more weight" to the

5  August 29, 2006 report of another examining physician, Dr. Garfinkel (the "Garfinkel Report"),

6  because, among other reasons, Dr. Garfinkel "actually performed a physical exam of the claimant

7  and observed her spontaneous action during the exam." (Id.)

8         After assessing plaintiff's RFC, the ALJ proceeded to step four of the analysis and

9  determined that plaintiff was capable of performing her past relevant work as a home health

10  provider. (AR 30.)  Based in part on the VE's testimony, the ALJ found that while plaintiff

11  could perform her past relevant work, she could do so only as such work is performed in the

12  national economy, i.e., at the "medium" exertional level — not as plaintiff had actually

13  performed it, i.e., at the "heavy" exertional level. (Id.)

14         Because of the finding at step four, the ALJ was not required to proceed to step

15  five of the inquiry.  However, the ALJ nonetheless continued on to step five and determined that

16  plaintiff could perform several other jobs existing in the regional economy. (AR 31.)

17  II.    STANDARDS OF REVIEW

18         The court reviews the Commissioner's decision to determine whether it is (1) free

19  of legal error, and (2) supported by substantial evidence in the record as a whole. Bruce v.

20  Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th

21  Cir. 2009).  This standard of review has been described as "highly deferential." Valentine v.

22  Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "'Substantial evidence means

23  more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

24  reasonable mind might accept as adequate to support a conclusion.'" Bray v. Comm'r of Soc.

25  Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035,

26  1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health &

7

1  Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  "The ALJ is responsible for determining

2  credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews,

3  53 F.3d at 1039; Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the

4  final arbiter with respect to resolving ambiguities in the medical evidence.").

5         Findings of fact that are supported by substantial evidence are conclusive.

6  42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where

7  the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its]

8  judgment for the ALJ's."  Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528

9  F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational

10  interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676,

11  679 (9th Cir. 2005)); Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1196 (9th Cir. 2004).

12  However, the court "must consider the entire record as a whole and may not affirm simply by

13  isolating a 'specific quantum of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting

14  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue,

15  504 F.3d 1028, 1035 (9th Cir. 2007).

16  III.   ANALYSIS

17         A.   The ALJ Determined That Evidence Conflicted With The Tanson Report
                And Gave Specific, Legitimate Reasons For Discounting That Report

18

19         Plaintiff argues that "The ALJ . . . must present clear and convincing reasons for

20  rejecting the uncontroverted opinion of a claimant's physician" and suggests that a treating

21  physician's opinion is always entitled to "controlling" weight.  (Pl.'s Motion at 1, 9-11 (citing

22  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).)  Plaintiff also characterizes the

23  Tanson Report as "not inconsistent" with the other evidence in the record.  (Pl.'s Reply at 2-4.)[7]

24

25         [7] Plaintiff's cites a non-controlling, out-of-circuit district court opinion in support of this
   argument.  (Pl.'s Reply at 2-4 (citing Dominguese v. Massanari, 172 F. Supp. 2d 1087, 1100
26  (E.D. Wis. 2001) (suggesting that a treating physician's opinion should be given controlling

1   As discussed below, plaintiff's arguments are not well-taken.  As the Commissioner correctly

2   argues, plaintiff "misapplies the clear and convincing standard," because the ALJ was only

3   required to provide legitimate and specific reasons for discounting the opinions of Drs. Tanson

4   and Kalman.  (See Def.'s Motion at 9, 11.)  A review of the ALJ's decision, and of the record

5   itself, confirms that substantial evidence supports the ALJ's determination that the opinions

6   expressed in the Tanson Report were inconsistent with other evidence in the record.

7          The medical opinions of three types of medical sources are recognized in social

8   security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but

9   do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

10  claimant (nonexamining physicians)."  Lester, 81 F.3d at 830.  Generally, a treating physician's

11  opinion should be accorded more weight than opinions of doctors who did not treat the claimant,

12  and an examining physician's opinion is entitled to greater weight than a non-examining

13  physician's opinion.  Id.  However, "[t]he ALJ is responsible for determining credibility and

14  resolving conflicts in medical testimony."  Magallanes, 881 F.2d at 750.

15         Plaintiff argues that the ALJ needed to state "clear and convincing" reasons before

16  discounting the opinions expressed within the Tanson Report.[8]  (Pl.'s Motion at 9 ("The ALJ . . .

17  must present clear and convincing reasons for rejecting the uncontroverted opinion of a

18  claimant's physician.") (quoting Magallanes, 881 F.2d at 751).)  Plaintiff is correct that a treating

19  ――――――――――――――――

20  weight even if the record does not support that opinion).)  Given that the Ninth Circuit Court of
    Appeals has provided directly applicable precedent addressing the weight to be accorded to the
    opinions of treating physicians where evidence in the record conflicts with those opinions, see

21  Magallanes, 881 F.2d 751-52; Batson, 359 F.3d at 1194-95, the court does not find the
    Dominguese decision particularly instructive.  In any event, the court in Dominguese found that

22  the ALJ failed to identify "any evidence that the ALJ deemed inconsistent" with the treating
    physician's opinion, and failed to "explain[] why he saw an inconsistency."  Dominguese, 172 F.

23  Supp. 2d at 1100.  As discussed herein, the ALJ in plaintiff's case both identified several specific
    inconsistencies and explained them as part of her decision to discount Dr. Tanson's opinion.

24  (AR 28-30.)  Accordingly, the Dominguese case does not aid plaintiff's argument.

25      [8]   In June and September of 2005, Dr. Tanson diagnosed plaintiff with chronic low back
    syndrome, bilateral knee arthritis, and early Hepatitis C, and prescribed her medication for

26  urinary stress incontinence.  (AR 162-63.)

physician's opinion may be entitled to weight in certain instances, i.e., where that opinion is

uncontradicted and not conclusory.  See Magallanes, 881 F.2d at 751; Batson, 359 F.3d at 1195.

Here, the ALJ found that plaintiff's treating physician's opinion was not entitled to weight

because it was conclusory and because evidence in the record controverted it (AR 28-30), and as

described below, the ALJ provided specific, legitimate reasons for discounting the opinion.

Lester, 81 F.3d at 830-31; accord Valentine, 574 F.3d at 692.

Plaintiff's argument is based on a partial reading of the rule from Magallanes.

(Pl.'s Motion at 9 (partially quoting Magallanes, 881 F.2d at 751).)  A more complete quote from

that decision clarifies when weight will typically be ascribed to treating physicians' opinions:

> We afford greater weight to a treating physician's opinion
> because "he is employed to cure and has a greater
> opportunity to know and observe the patient as an
> individual." [Citation.] The treating physician's opinion is
> not, however, necessarily conclusive as to either a physical
> condition or the ultimate issue of disability. [Citations.] The
> ALJ may disregard the treating physician's opinion whether
> or not that opinion is contradicted. [Citations.]  For
> example, the ALJ need not accept a treating physician's
> opinion which is "brief and conclusionary in form with
> little in the way of clinical findings to support [its]
> conclusion." [Citation.]  To reject the *uncontroverted*
> opinion of a claimant's physician, the ALJ must present
> *clear and convincing* reasons for doing so. [Citations.]
>
> To reject the opinion of a treating physician which *conflicts
> with* that of an examining physician, the ALJ must "'make
> findings setting forth *specific, legitimate reasons* for doing
> so that are based on substantial evidence in the record.'"
> [Citations.] "The ALJ can meet this burden by setting out a
> detailed and thorough summary of the facts and conflicting
> clinical evidence, stating his interpretation thereof, and
> making findings." [Citation.] [ . . .] "'[T]o the extent that
> [the nontreating physician's] opinion rests on objective
> clinical tests, it must be viewed as substantial evidence . . . .
> '" [Citations.]  Where medical reports are inconclusive,
> "'questions of credibility and resolution of conflicts in the
> testimony are functions solely of the Secretary.'"
> [Citations.]

Magallanes, 881 F.2d at 751 (emphasis added) (citations omitted) (upholding ALJ's rejection of

treating physician's opinion where rejection was based *partially*, but not *solely*, upon the

testimony of a *non-examining, non-treating* physician); <u>accord</u> <u>Lester</u>, 81 F.3d at 830 (holding

that ALJ's rejection of treating physician's opinion was improper where it was based *solely* upon

the testimony of a *non-treating, non-examining* medical advisor); <u>accord</u> <u>Batson</u>, 359 F.3d at

1194-96.  Whether or not an ALJ finds that a treating physician's opinion is contradicted by other

evidence in the record, "an ALJ may discredit treating physicians' opinions that are conclusory,

brief, and unsupported by the record as a whole, or by objective medical findings."  <u>See</u> <u>Batson</u>,

359 F.3d at 1195 (citations omitted).

In short, "clear and convincing" reasons must be provided when an ALJ rejects a

treating physician's opinion even though nothing in the record controverts it.  <u>Magallanes</u>, 881

F.2d at 751  If evidence in the record conflicts with the treating physician's opinion, or if the

opinion is conclusory, however, "specific and legitimate" reasons must be given prior to

discounting that opinion.  <u>Id.</u> (citing cases); <u>see also</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149

(9th Cir. 2001) (holding that treating physician's opinion is "not binding on the ALJ with respect

to the existence of an impairment or the ultimate determination of disability," and holding that an

examining physician's opinion alone constituted substantial evidence where it rested upon his

own independent examination of the claimant); <u>accord</u> <u>Batson</u>, 359 F.3d at 1195.   Similarly,

"when confronted with conflicting medical opinions, an ALJ need not accept a treating

physician's opinion that is conclusory and brief and unsupported by clinical findings."

<u>Tonapetyan</u>, 242 F.3d at 1149.  Indeed, although a treating physician's opinion is generally given

more weight than an examining physician's opinion, it is not conclusive as to either the physical

condition or to the ultimate issue of disability.  <u>Morgan v. Comm'r of Soc. Sec.</u>, 169 F.3d 595,

600 (9th Cir. 1999).

Accordingly, contrary to plaintiff's suggestion, a treating physician's opinion is

not automatically controlling.  <u>See</u> <u>Magallanes</u>, 881 F.2d at 751; <u>Batson</u>, 359 F.3d at 1194-96.

An ALJ is entitled to discount a treating physician's opinion in light of conflicting evidence, and

conflicting evidence may take the form of an examining physician's opinion.  <u>E.g.</u>, <u>Lester</u>, 81

11

F.3d at 830; <u>Valentine</u>, 574 F.3d at 692-93 (holding that the ALJ's identification of a "a contradiction" between treating the physician's opinion and treatment progress reports constituted a specific and legitimate reason for rejecting the opinion). Under <u>Magallanes</u> and the above-cited authorities, an ALJ may reject a treating physician's opinion if it is conclusory and/or conflicts with an examining physician's opinion, <u>see</u> <u>Tonapetyan</u>, 242 F.3d at 1149, so long as the ALJ supports the rejection with specific, legitimate reasons based on substantial evidence. <u>Magallanes</u>, 881 F.2d at 751. As discussed below, in this case the ALJ thoroughly summarized the facts and conflicting evidence, stated her interpretation, and made findings. <u>See id.</u> at 755.

Plaintiff's argument is partially based on a belief that nothing in the record actually "conflicts" or is "inconsistent" with Dr. Tanson's opinions. (Pl.'s Reply at 1-3.) Belying plaintiff's argument, the ALJ described several inconsistencies as well as the conclusory nature of the Tanson Report, and it cannot be said that the ALJ discounted that Report without a basis in substantial evidence. <u>See</u> <u>Magallanes</u>, 881 F.2d at 751-52. For instance, the ALJ in <u>Magallanes</u> rejected the treating physician's opinions based on conflicting evidence in the form of laboratory test results, testimony by the claimant that conflicted with her own treating physician's opinion, and contrary reports from examining (and non-examining) physicians. <u>Id.</u> Similarly, as described below, the ALJ discounted Dr. Tanson's opinion due to its conclusory nature, the conflicting evidence within laboratory test results regarding plaintiff's back pain, testimony by plaintiff conflicting with Dr. Tanson's opinion, and contrary reports from examining physician Dr. Garfinkel.

       1.     <u>The ALJ Found That The Tanson Report Was Conclusory, Internally Inconsistent, And Lacking Objective Support</u>

An ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings. <u>Tonapetyan</u>, 242 F.3d at 1149; <u>Batson</u>, 359 F.3d at 1195. Where an examining physician identifies characteristics that might limit a claimant's ability to work on a sustained basis, but does not "explain *how*" the characteristics preclude work activity

1  in the claimant's case, this is a specific reason permitting the ALJ's rejection of the physician's

2  opinion.  Morgan, 169 F.3d at 601 (emphasis in original).

3          Here, the ALJ considered Dr. Tanson's opinion regarding plaintiff's postural

4  limitations and work-related impairments both "conclusory" and lacking "supporting evidence of

5  a physical exam."  (AR 29.)  For instance, while Dr. Tanson ordered plaintiff's x-rays and lab

6  tests, Dr. Tanson's opinions regarding plaintiff's limitations did not appear linked to those tests.

7  (Id.)  Specifically, the ALJ noted that Dr. Tanson's treatment notes revealed that plaintiff's

8  initial MRI showed "no significant abnormality," and a subsequent MRI showed spondylolysis at

9  only "less than Grade I on a scale of I-IV."  (AR 30, 146, 150.)  The ALJ thus discredited the

10  Tanson Report based on the lack of supporting objective evidence, supporting Dr. Tanson's

11  diagnosis of chronic low back pain.  (AR 28-29; 185-89.)  See Magallanes, 881 F.2d at 753-54

12  (ALJ's noting an absence of "objective medical signs" predating alleged disability onset date was

13  held to be "sufficiently specific and legitimate to rebut" treating physician's opinion regarding

14  onset date); accord  Batson, 359 F.3d at 1195.

15          The ALJ also noted the inconsistency of Dr. Tanson's opinions about plaintiff's

16  physical limitations given that his own treatment notes revealed that plaintiff's

17  "[m]usculoskeletal system is within normal limits."  (AR 29, 152-63.)  The ALJ also reviewed

18  Dr. Tanson's notes and was unable to find any basis for his opinions regarding plaintiff's

19  particular postural limitations.  (AR 29.)

20          In a nutshell, the ALJ discredited the Tanson Report because neither the Report

21  itself, nor Dr. Tanson's treatment notes, explained "how" plaintiff's back problems precluded her

22  work activities.  See Morgan, 169 F.3d at 601.  The ALJ determined that the Tanson Report

23  merely conclusorily stated that plaintiff could not engage in even sedentary level work, given that

24  Dr. Tanson's notes did not reveal how Dr. Tanson drew that particular conclusion.  See 20 C.F.R.

25  § 1527(d) (listing internal inconsistency amongst a number of factors to be considered when the

26  SSA declines to give controlling weight to a treating physician's medical opinion).  The ALJ

1   discounted Dr. Tanson's opinion that plaintiff's impairments were at least partially related to her

2   back pain (AR 186 (listing "chronic low back syndrome" as a "medical finding" supporting his

3   opinions regarding plaintiff's ability to lift and carry, and "low back pains" as a "medical

4   finding" supporting his opinions regarding plaintiff's ability to sit, stand, and walk)), because a

5   "review of the chart notes from [plaintiff's] treatment with Dr. Tanson reveal little regarding the

6   diagnosis and treatment of [plaintiff's] back problems, and made no recommendation for further

7   treatment or evaluation of the source of plaintiff's pain." (AR 29.)  Indeed, the form on which

8   the Tanson Report was written specifically asks the authoring physician for a list of treatments,

9   "including prescribed therapies, medications, assistive devices, and dates of previous or

10  scheduled surgeries." (AR 185.)  Dr. Tanson did not provide a single example of treatments

11  recommended or completed by plaintiff.[9]   (Id.)

12          Accordingly, substantial evidence also supports the ALJ's finding that the Tanson

13  Report was undermined by conflicting evidence in the record.

14                    2.    The ALJ Found That The Tanson Report Conflicted With Plaintiff's
                            Statements And Plaintiff's Conduct

15

16          The ALJ found that plaintiff's own statements contradicted Dr. Tanson's

17  assessment of her limitations.  (AR 28-29.)  For instance, the ALJ contrasted plaintiff's

18  representation that she could lift less than one pound (AR 75) with Dr. Tanson's opinion that she

19  could lift up to 10 pounds (AR 186).  The ALJ also contrasted Dr. Tanson's opinions that

20  plaintiff's musculoskeletal system was "within normal limits" and that her neurological

21  examination was "normal" with plaintiff's own representations of her limitations during the same

22

23          [9]  The ALJ found that Dr. Tanson did not make any "recommendation for treatment" as to
     the source of plaintiff's back pain.  (AR 29.)  Plaintiff argues that she did receive ongoing
     "treatment" (Pl.'s Reply at 4) because she was prescribed pain medication (AR 30 (noting that
24   plaintiff does not appear to be receiving any ongoing treatment "other than medications"),
     however, the fact that the pain could be controlled with medication indicates that it is not
25   disabling.  Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2005)
     ("[i]mpairments that can be controlled effectively with medication are not disabling for the
26   purpose of determining eligibility for SSI benefits.")

1   time frame, i.e., that she could not "even lift my plate" or "walk to kitchen" or "take care of self."

2   (AR 29; 130-34 (plaintiff's Exertional Daily Activities Questionnaire dated July 11, 2006).)

3          The ALJ found that the Tanson Report was further undermined by the fact that

4   plaintiff was able to work continuously even after the date Dr. Tanson deemed her physically

5   unable to do so.  (AR 29.)  Dr. Tanson opined that plaintiff had labored under various work-

6   related limitations cited above since November 4, 2004.  (AR 188.)  Specifically, Dr. Tanson

7   opined that, as of November 4, 2004, plaintiff's physical impairments limited her to lifting only

8   10 pounds and to the postural limitations of sitting, standing, and walking for 2 hours in an 8

9   hour day, no more than one hour at a time.  (AR 29.)  However, plaintiff testified that she

10  continued to work even after November 2004: she worked until June 23, 2006.  (AR 69-70.)

11  During that period, as an in-home aide, plaintiff stated that she worked 7 days a week, 5 hours

12  per day, lifted 50 pounds frequently, and would crouch, kneel, crawl, stand, and walk for an hour

13  each out of her 5 hour workday.  (AR 113-14.)  Therefore, plaintiff continued to work for nearly

14  18 months after the date Dr. Tanson listed as the last date plaintiff was able to engage in

15  sustained work-related activities.  The ALJ determined that plaintiff's post-November 2004 daily

16  activities undermined Dr. Tanson's opinion that plaintiff's physical limitations precluded her

17  from engaging in sustained work activities.  (AR 29, 188.)  Accordingly, the record contains

18  substantial evidence supporting the ALJ's discounting the Tanson Report.

19              3.    The ALJ Found That The Tanson Report Conflicted With The Garfinkel
                      Report
20

21          The ALJ also determined that the contrary opinions of Dr. Garfinkel, an

22  examining consultative physician, were entitled to more weight than the opinions of Dr. Tanson.

23  (AR 30.)  The Garfinkel Report and the Tanson Report conflict in several areas; for instance, Dr.

24  Garfinkel found plaintiff able to lift 50 pounds occasionally and 25 pounds frequently (AR 168),

25  while Dr. Tanson found plaintiff able to lift only up to 10 pounds occasionally (AR 186).  The

26  ////

1   two Reports conflict in other areas that need not be described at length here.[10]  Plaintiff points out

2   a few factual similarities between Dr. Tanson's opinion and Dr. Garfinkel's opinion and argues

3   that these similarities render the two opinions "not inconsistent," such that Dr. Tanson's opinion

4   could not be rejected without "clear and convincing" reasons.  (Pl.'s Motion at 10-11.)  The fact

5   that there are *some* similarities in the findings of both physicians does not necessarily render their

6   opinions "consistent," however, and plaintiff cites no authorities in support of that argument.

7   (Id.)

8           The ALJ was persuaded by Dr. Garfinkel's opinions because they were supported

9   by physical exertion tests and Dr. Garfinkel's contemporaneous observation of plaintiff's

10  movements, and Dr. Tanson's opinions were not so supported.  (AR 29-30.)  The ALJ

11  specifically stated that she considered the Tanson Report to be weaker because it was not

12  supported by such objective evidence.  (AR 29.)   The ALJ also noted that Dr. Garfinkel's RFC

13  assessment was more persuasive because it was supported by another RFC assessment that had

14  been completed by a state agency nonexamining physician.[11]  (AR 30.)  Plaintiff has not cited

15  authorities suggesting that the ALJ was required to offer *additional* reasons for deciding to accept

16  Dr. Garfinkel's opinions over Dr. Tanson's, and precedent confirms additional reasons are

17  unnecessary.  See e.g. Tonapetyan, 242 F.3d at 1149 (holding that the opinion of a examining

18  physician "alone" constituted substantial evidence sufficient to support the ALJ's rejection of the

19

20      [10]  Dr. Garfinkel also opined that plaintiff could stand and walk for up to 6 hours in an 8-
    hour day.  On the other hand, Dr. Tanson opined that plaintiff could only stand for 2 hours, walk
21  for 2 hours, and sit for 2 hours in an 8-hour day; each of these physical activities could be
    sustained for only 1 hour at a time.  Dr. Tanson opined that plaintiff could only occasionally use
22  her right hand for simple grasping and fine manipulation.  Dr. Garfinkel found that plaintiff had
    normal range of motion of her wrists and hands with "good active motion" and strength of "5/5
23  in all extremities."  (Compare AR 164-68 with 185-89.)

24      [11]  On September 27, 2006, a state agency nonexamining physician completed an RFC
    assessment which found that plaintiff could: (1) lift and carry 50 pounds occasionally; (2) lift and
25  carry 25 pounds frequently; (3) stand and walk for 6 hours in an 8-hour workday, alternating
    every two hours; (4) sit for 6 hours in an 8-hour workday; and (5) push and pull, however,
26  pushing and pulling would be limited in the lower extremities.  (AR 171.)

treating physician's opinion, because the examining physician's opinion rested on "his own independent examination of" the plaintiff, and because the treating physician's opinion was unsupported by treatment notes or clinical findings); see Magallanes, 881 F.2d at 752 (the reports of consultative physicians may serve as substantial evidence supporting rejection of a treating physician's opinions). Further, a treating physician's opinion not supported by "the record as a whole" or by other "objective medical findings" can properly be given "minimal evidentiary weight." Batson, 359 F.3d at 1195 (citing Tonapetyan, 242 F.3d at 1149; Lester, 81 F.3d at 830).

In sum, the ALJ itemized evidence conflicting with Dr. Tanson's opinion.  She cited to specific, legitimate evidence in the record as described above, and her decision to reject the Tanson Report is supported by substantial evidence.  See Magallanes, 881 F.2d at 753.

### B.   The ALJ Did Not Violate A Duty To "Recontact" Dr. Tanson

"The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Tonapetyan, 242 F.3d at 1150 (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)); Webb v. Barnhart, 433 F.3d 683, (9th Cir. 2005).  Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry.  See Smolen, 80 F.3d at 1288; Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998).  "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan, 242 F.3d at 1150 (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

Plaintiff argues that the ALJ should have recontacted  Dr. Tanson "to the extent the ALJ had questions about" Dr. Tanson's "opinion regarding the onset of" plaintiff's impairments.  (Pl.'s Motion at 10.)  However, the ALJ adopted the onset date stated in the Tanson Report, and nothing indicates that the ALJ "had questions about" plaintiff's disability

17

1  onset date.  (Id.)  The ALJ kept the record open after the hearing, and plaintiff had the

2  opportunity to supplement the record to clarify any ambiguities she now raises.[12]  (AR 84-85.)

3          A duty to further develop the record is only triggered by ambiguous evidence or

4  by evidence that is insufficient on which to make a disability determination.  Bayliss v. Barnhart,

5  427 F.3d 1211, 1217 (9th Cir. 2005).  Plaintiff bears the burden of proving her disability, and she

6  cannot shift that burden by arguing that the ALJ should have developed the record further.

7  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).  Here, the record was sufficiently

8  developed, in that the ALJ's decision was based upon medical evidence, plaintiff's testimony,

9  and a consultative examination by Dr. Garfinkel.  Moreover, the ALJ kept the record open for 30

10  days (AR 84-85), which discharged the ALJ's obligations to develop the record.  Tonapetyan,

11  242 F.3d at 1150.  Accordingly, plaintiff has not shown that the ALJ failed to discharge a duty to

12  recontact Dr. Tanson in order to further develop the record in this case.

13  ////

14  ////

15

16  [12]  The ALJ adopted the disability onset date the Tanson Report itself provided.  (AR 29, 188.)  For the first time in her Reply, plaintiff suggests that Dr. Tanson, her own treating

17  physician, erroneously identified November 4, 2004 (AR 188), as plaintiff's disability onset date.  (Pl.'s Reply at 3.)  Plaintiff notes that in a subsequent report, Dr. Tanson listed the disability

18  onset date as June 23, 2006, and plaintiff implies that this both creates an ambiguity and saves the Tanson Report from being inconsistent with plaintiff's continuing to work after November

19  2004.  (Pl.'s Reply at 3.)  Plaintiff urges that Dr. Tanson's later-proffered onset date would negate the inconsistency the ALJ highlighted.  (Id.; AR 29 (noting plaintiff worked continuously

20  for "almost 18 months" *after* Dr. Tanson's cited onset date).)  Plaintiff also suggests that the later onset date makes more sense given that Dr. Tanson "did not start treating her until 2005 . . . ."

21  (Pl.'s Reply at 3.)  However, the parties did not dispute the onset date in their hearing before the ALJ, and plaintiff has not previously argued that Dr. Tanson's inconsistent representations

22  regarding disability onset dates created any ambiguity.  (Pl.'s Reply at 3.)  Plaintiff apparently seeks to invoke her own treating physician's inconsistent statements to create a self-serving

23  ambiguity at this late stage.  However, even if plaintiff had timely raised this "ambiguity" argument, the record does not support it.  For instance, plaintiff asserts that Dr. Tanson did not

24  start treating plaintiff until 2005 (Pl.'s Reply at 3); to the contrary, the record indicates that Dr. Tanson ordered plaintiff to undergo a lumbosacral spine exam on January 12, 2004.  (AR 150.)

25  The record thus confirms that Dr. Tanson began treating plaintiff before 2005.  Substantial evidence supports the disability onset date stated within the Tanson Report and adopted in the

26  ALJ's decision, and belies plaintiff's suggestion that Dr. Tanson "did not start treating" plaintiff until 2005.  (Pl.'s Reply at 3.)

C.   The ALJ Determined That Evidence In The Record Conflicted With The Kalman Report And Gave Specific, Legitimate Reasons For Discounting That Report

Dr. Kalman was an "examining physician" who met with plaintiff once.  (AR 195.) The ALJ gave "very little weight" to the opinions expressed in the Kalman Report.  (Pl.'s Motion 1, 11-14; AR 30.)   The ALJ discounted the Kalman Report for several reasons: the ALJ determined that plaintiff was a less-than-credible witness; she deemed the Kalman Report dependant upon plaintiff's veracity; and she found that the Kalman Report conflicted with other evidence in the record and lacked objective support.  (AR 29-30.)  As described below, the ALJ's proffered specific, legitimate reasons for discounting Kalman Report each find support in the record.

1.   The ALJ Correctly Characterized Dr. Kalman As An "Examining" Physician

Contrary to plaintiff's suggestion, Dr. Kalman was an "examining" physician, so his opinion was not entitled to the relative deference sometimes afforded treating physicians' opinions.[13]  See Morgan, 169 F.3d at 600-01 (while treating physicians' opinions may be rejected in light of contradictory evidence and based on specific, legitimate reasons, they are generally entitled to more weight than examining physicians' opinions ); Lester, 81 F.3d at 830-31.

Plaintiff argues that the ALJ needed "clear and convincing" evidence in order to discount the Kalman Report.  (Pl.'s Reply at 4 (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990) (holding that "[a]lthough the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons for rejecting such an opinion where it is uncontradicted," and holding that "non-examining physicians' conclusion[s], with nothing more" do not constitute substantial evidence controverting an examining physician's opinion.)  The rule

---

[13]   It is undisputed that Dr. Kalman was an "examining" physician who met with plaintiff one time (AR 30), not a treating physician with an ongoing treatment relationship with plaintiff. See Lester, 81 F.3d at 830-31; 20 C.F.R. §§ 404.1502.

1    from Pitzer addresses the relative strength of the opinions of *examining* physicians versus *non-*

2    *examining* physicians, and here Dr. Kalman's opinion was not merely contradicted by a non-

3    examining physician's opinion.  See Pitzer, 908 F.2d at 506 n.4.  The Pitzer decision is not

4    pertinent here, because the ALJ did not rely "solely" on conclusions of a non-examining

5    physician in discounting the Kalman Report.[14]  (AR 28-30.)

6               2.    The ALJ Supported Her Adverse Credibility Determination With Cogent
                      Reasons And Substantial Evidence, And The ALJ Discounted The Kalman
7                     Report Based In Part Upon That Determination

8               Although plaintiff did not directly raise this issue, the court finds that the ALJ's

9    adverse credibility determination is supported by substantial evidence.[15]  Because plaintiff

10   challenges the ALJ's rejection of the Kalman Report, plaintiff has implicitly challenged the

11   adverse credibility determination partially motivating that rejection.

12              An ALJ's rejection of a claimant's testimony must be accompanied by a specific

13   finding to that effect, supported by a "specific, cogent reason for the disbelief."  Lewin v.

14   Schweiker, 654 F.2d 631, 633 (9th Cir. 1981).   If an ALJ finds that a claimant's testimony

15   relating to the intensity of his pain is unreliable, the ALJ must make a credibility determination

16   and explain why the testimony is unpersuasive.  Morgan, 169 F.3d at 599; accord Valentine, 574

17   F.3d at 693.  The ALJ must point to "specific evidence in the record" undermining the claimant's

18   testimony.  Valentine, 574 F.3d at 693; Magallanes, 881 F.2d at 755.  Questions of credibility

19   and resolutions of conflicts in the testimony are functions solely of the Secretary.  Valentine, 574

20

21        [14]  In support of her decision to give the Garfinkel Report more weight than the Tanson
     Report, the ALJ *partially* relied upon the fact that a state agency non-examining physician's RFC
22   assessment  (AR 171) accorded with Dr. Garfinkel's opinion.  (AR 30.)  But as described herein,
     the ALJ did not *solely* rely on the non-examining physician's opinion in discounting the Kalman
23   Report or reaching any of her conclusions.

24        [15]  Defendant correctly notes (Def.'s Motion at 13) that plaintiff did not contest the ALJ's
     determination that plaintiff was less than fully credible regarding the extent of her pain.  (AR 28-
25   29.)  The court must nonetheless discern whether the ALJ's adverse credibility determination was
     properly supported, because the ALJ's rejection of the Kalman Report was due largely to the fact
26   that it relied on the testimony of a less-than-credible plaintiff.  (AR 30.)

1  F.3d at 693.

2          a.          The ALJ Supported Her Adverse Credibility Determination With Specific,
3                        Cogent Reasons

4          Here, the ALJ found plaintiff to be "not entirely credible" and "inconsistent with

5  the medical evidence" regarding the intensity, persistence, and limiting effects of her pain,

6  discomfort, and fatigue.  (AR 28.)  The ALJ drew this adverse credibility determination from

7  several evidentiary bases, each of which the ALJ specifically cited.  For instance, plaintiff

8  testified that she could walk 15-20 minutes before feeling tired, but plaintiff also gave the

9  conflicting testimony that she could only walk from the front room to the kitchen.  (Compare AR

10  75 ("15 to 20 minutes") with AR 130 ("can't walk from my front room to my kitchen").)  To find

11  a claimant not credible, the ALJ may rely on "internal contradictions" in the claimant's

12  testimony.  Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997) accord Batson, 359

13  F.3d at 1196-97.  Plaintiff's testimony was also undermined by the medical evidence in the

14  record.  Plaintiff testified that she could lift less than one pound (AR 75), and could not even lift

15  something as light as a plate (AR 130-32), but the medical evidence (including the opinion of her

16  treating physician) suggests she could lift up to 10 pounds occasionally (AR 186) or, as Dr.

17  Garfinkel opined based on a physical exertion test, up to 25 pounds frequently and 50 pounds

18  occasionally.  (AR 168.)  Similarly, despite plaintiff's testimony regarding pain in her lower

19  back, the medical evidence did not show "any significant abnormality" in her lower spine.  (AR

20  28.)  Plaintiff also represented that she "can't take care of self any more" and is "not able to to

21  move" [sic] (AR 130-32), that she "can't clean my own home, go grocery shopping, cook dinner,

22  do laundry, or anything else because of the pain" (AR 133-34), that "I need help bathing and

23  dressing" (AR 140), and testified that she could not "dress and bathe herself without help" (AR

24  71-72), and the ALJ found that these representations were "inconsisten[t]" (AR 29) given Dr.

25  Kalman's opinion that plaintiff could indeed care for "her own personal hygiene."  (AR 29; AR

26  193.)  Accordingly, the ALJ's adverse credibility determination was supported by specific,

1  cogent reasons and substantial evidence.

2      b.    The ALJ Discounted The Kalman Report Because It Was Largely Based
            On Plaintiff's Less-Than-Credible Statements

3

4          Where an ALJ determines that the plaintiff is not credible, and where the ALJ

5  determines that a physician's opinion is essentially a rehashing of claimant's own statements, that

6  opinion may be undermined by the ALJ's adverse credibility determination.  Tommasetti, 533

7  F.3d at 1041; Morgan, 169 F.3d at 602-30 (upholding ALJ's discounting results of psychological

8  testing conducted by examining psychologist in part because claimant was "not entirely

9  credible").

10         Here, the ALJ found that the Kalman Report reflected plaintiff's own

11 self-assessment and subjective willingness to work.  (AR 30.)  The ALJ determined that the

12 Kalman Report was entitled to "very little weight" in part because it was "not supported by any

13 testing, clinical[,] or other objective findings" and because it was based on the statements of a

14 less-than-credible plaintiff.  (AR 30.)  The ALJ found the Kalman Report to be primarily based

15 on plaintiff's subjective comments concerning her condition.  (Id.)  The ALJ specifically noted

16 that the "source" of Dr. Kalman's conclusions regarding plaintiff's daily activity functioning and

17 medical history was plaintiff's own statements, despite Dr. Kalman's own conclusion that

18 plaintiff was a "poor historian."  (Id.)  Because the Kalman Report was based largely upon

19 plaintiff's own statements, and because the ALJ found plaintiff to be less than credible regarding

20 her symptoms and limitations, the ALJ had sufficient basis to give the Kalman Report less

21 weight.  See Morgan, 169 F.3d at 602 (ALJ properly rejected physicians' opinions where such

22 opinions were 'premised to a large extent upon the claimant's own accounts of his symptoms and

23 limitations,' which had been 'properly discounted.'"); accord Tommasetti, 533 F.3d at 1041.

24     c.    The ALJ Discounted The Kalman Report Due To A Lack Of Objective
            Support

25

26         Plaintiff attempts to avoid the consequences of the ALJ's adverse credibility

1   determination by arguing that Dr. Kalman's opinions were *also* based upon Dr. Kalman's

2   "mental status examination," not just plaintiff's subjective representations.   (Pl.'s Reply at 7-8.)

3   Plaintiff's identification of this alternate, more objective "examination" basis for the opinions in

4   the Kalman Report does not render the ALJ's decision erroneous.   In both <u>Morgan</u> and

5   <u>Tommasetti</u>, the Ninth Circuit Court of Appeals clarified that an ALJ is not required to adopt a

6   *physician's* decision to credit the testimony a plaintiff gave during an exam; instead, the ALJ

7   may make his or her own credibility determination and may discount the physician's opinion

8   accordingly.   <u>See Morgan</u>, 169 F.3d at 602; <u>Tommasetti</u>, 533 F.3d at 1041.   Moreover, Dr.

9   Kalman's "mental status examination," which appears to have been a series of questions and

10  answers between Dr. Kalman and plaintiff, does not appear to have been the sort of "objective"

11  exam that would alleviate concerns about depending on a less-than-credible or "poor historian"

12  plaintiff.   <u>See Tommasetti</u>, 533 F.3d at 1041 (upholding ALJ's rejection of physician's opinion

13  where it was based "to a large extent" on claimant's self-reports and where assessment was

14  essentially a "rehashing of" claimant's own statements).   The ALJ concluded as much when she

15  clarified that the Kalman Report lacked "objective" support.   (AR 30.)   Even if Dr. Kalman's

16  "mental status examination" was somewhat objective (i.e., not entirely based upon plaintiff's

17  subjective accounts of her symptoms), Dr. Kalman's conclusions nonetheless arose at least in

18  part from plaintiff's responses to questions and plaintiff's own accounts of her symptoms.   (AR

19  30; 191-99.)

20          d.      <u>The ALJ Discounted The Kalman Report Because Evidence In The Record
                    Conflicted With It</u>

21

22          Plaintiff also argues that nothing in the record conflicts with Dr. Kalman's report.

23  According to plaintiff, because Dr. Kalman "is the only medical source to render an opinion

24  regarding [plaintiff's] mental impairment, his report stands unrebutted," therefore, it must be

25  afforded weight and cannot be discounted without "clear and convincing" reasons.   (Pl.'s Reply

26  at 4 (citing <u>Pitzer</u>, 908 F.2d 502, 506 (9th Cir. 1990).)   Contrary to plaintiff's suggestion, <u>Pitzer</u>

1    does not stand for the proposition that an examining physician's opinion cannot be rejected

2    without another physician's opinion that directly "rebuts" it.  Pitzer, 908 F.2d at 506 n.4.

3             While the record does not contain the testimony of a mental health professional

4    that squarely "rebuts" all of Dr. Kalman's testimony, the ALJ found that Dr. Kalman's opinions

5    were controverted by evidence in the record and gave specific reasons for this finding.  (AR 29-

6    30.)  In other words, the ALJ did not reject Dr. Kalman's opinions for "no reason."  See Pitzer,

7    908 F.2d at 506.  As detailed above, the ALJ found that plaintiff was less than credible, and that

8    the Report relied on plaintiff's testimony and was weakened as a result.  (AR 29-30.)  Similarly,

9    the ALJ found that Report relied on a plaintiff whom Dr. Kalman himself doubted.  (AR 30

10   (noting Dr. Kalman found plaintiff to be a "poor historian").)  The ALJ believed this undermined

11   the Kalman Report.  See Morgan, 169 F.3d at 602; accord Tommasetti, 533 F.3d at 1041.

12           The ALJ also afforded less weight to the Kalman Report based on Dr. Kalman's

13   one-time examination of plaintiff, the fact that the Report was unsupported by objective clinical

14   testing, and the fact that the Report was inconsistent with other evidence regarding, for instance,

15   plaintiff's abilities to care for herself.  (AR 29; AR 130-32 (plaintiff represented that she "can't

16   take care of self any more" and is "not able to to move" [sic] ); AR 133-34 (plaintiff represented

17   that she "can't clean my own home, go grocery shopping, cook dinner, do laundry, or anything

18   else because of the pain"); AR 140 (plaintiff represented that "I need help bathing and dressing");

19   AR 71-72 (plaintiff testified that she could not "dress and bathe herself without help"); AR 193

20   (Dr. Kalman opined that plaintiff could indeed care for "her own personal hygiene.")  Plaintiff

21   has not cited authorities suggesting that these grounds could not be used to discount the Report;

22   indeed, relevant authorities suggest otherwise.  20 C.F.R. § 416.927(d) (length of treatment and

23   frequency of examination, among other factors, are to be considered in determining the weight to

24   give a medical opinion); Magallanes, 881 F.2d at 750 ("The ALJ is responsible for determining

25   credibility and resolving conflicts in medical testimony.")

26           Accordingly, the ALJ properly concluded that the Kalman Report was based on

24

1   plaintiff's less-than-credible testimony and lacked the objective support that might warrant

2   giving the report more than "very little" weight. (AR 29-30.)  It cannot be said that Dr. Kalman's

3   testimony was "uncontradicted" or that the ALJ rejected the Kalman Report without sufficient

4   reason.  See Pitzer, 908 F.2d at 506.  Therefore, substantial evidence supports the ALJ's rejection

5   of the Kalman Report.

6          D.      Substantial Evidence Supports The ALJ's Finding That Plaintiff Had The
                   Residual Functional Capacity To Perform Her Past Relevant Work
7

8          The ALJ found that plaintiff retained the RFC to perform her past relevant work

9   (AR 30), and plaintiff argues that this finding is not based on substantial evidence.  (Pl.'s Motion

10  at 1.)  Plaintiff argues that the ALJ failed to properly credit the opinions of Drs. Tanson and

11  Kalman in assessing plaintiff's RFC, and thus improperly concluded that plaintiff was able to

12  perform the exertional demands of "medium" work.  (Id. at 15.)  These arguments are not well-

13  taken.  As stated above, the ALJ gave specific, legitimate reasons for discounting the opinions of

14  Drs. Tanson and Kalman and those reasons were supported by substantial evidence.

15          1.      The ALJ Accounted For All Of Plaintiff's Ailments In Assessing
                    Plaintiff's RFC
16

17          Aside from arguing that the ALJ improperly discounted the Tanson Report and

18  the Kalman Report, plaintiff also argues that the ALJ failed to consider all of plaintiff's ailments

19  in assessing her RFC.  (Pl.'s Motion at 17.)  In determining a claimant's RFC, the ALJ must

20  consider "all" of the claimant's impairments, including impairments that are not severe.

21  Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing SSR 96-

22  8p).  Specifically, plaintiff argues that the ALJ "failed to consider Mrs. Hayee's depression in

23  assessing her RFC. . ."  (Pl.'s Motion at 17.)  Plaintiff also argues that the ALJ "failed to include

24  the evidence pertaining to Mrs. Hayee's incontinence or her fatigue" in assessing plaintiff's RFC.

25  (Id.)  Contrary to plaintiff's arguments, however, the ALJ based her decision upon her careful

26  review of the "entire record."  (AR 26.)  The record contains references to plaintiff's depression,

1   incontinence, and fatigue, and it can be reasonably inferred that the ALJ "considered" each of

2   these impairments in rendering her decision.  See Carmickle, 533 F.3d at 1164.

3          a.      The ALJ Considered Plaintiff's Depression And Fatigue In Assessing
                   Plaintiff's RFC

4

5          The ALJ gave very little weight to the Kalman Report and the Tanson Report for

6   the reasons discussed above, and expressly recognized plaintiff's "depression" as a "not severe"

7   impairment.  (AR 26, 30.)   The ALJ thus at least "considered" plaintiff's depression before

8   concluding plaintiff's RFC would permit performance of plaintiff's prior work.  See Carmickle,

9   533 F.3d at 1164.  Indeed, after specifically finding plaintiff's "depression" to be "not severe"

10  (AR 26), and after discounting the Tanson and Kalman Reports and considering the "entire

11  record," the ALJ concluded that plaintiff's RFC did not preclude her prior relevant work as

12  performed in the national economy.  (AR 30.)

13         Similarly, in her review of the entire record the ALJ also expressly considered,

14  and discounted, plaintiff's representations as to the degree of her "fatigue."  (AR 28 ("Although

15  her impairments could reasonably be expected to produce symptoms of . . . *fatigue*, the

16  claimant's statements concerning the intensity, persistence and limiting effects of these

17  symptoms are not entirely credible . . . .") (emphasis added).)

18         It cannot be said that the ALJ failed to consider plaintiff's fatigue or depression in

19  assessing plaintiff's RFC; indeed, the ALJ's decision explicitly mentions both.  (AR 27-28.)

20         b.      The ALJ Considered Plaintiff's Incontinence In Assessing Plaintiff's RFC

21         Unlike plaintiff's depression and fatigue, the ALJ did not explicitly reference

22  plaintiff's incontinence within her decision.  However, plaintiff's treating physician also did not

23  reference plaintiff's incontinence in rendering his opinion regarding plaintiff's physical

24  limitations.  (AR 186-88 (not listing incontinence as among the "medical findings" supporting

25  his assessment of plaintiff's physical impairments and abilities).)  While Dr. Tanson's treatment

26  notes suggest plaintiff received medication for incontinence on one occasion (AR 163), Dr.

1    Tanson apparently did not deem plaintiff's incontinence as functionally limiting plaintiff's work-

2    related activities.  (AR 186-89 (no mention of incontinence within Dr. Tanson's report).)

3              Notwithstanding plaintiff's own treating physician's apparent opinion that

4    plaintiff's incontinence did not functionally limit her ability to work, it can be reasonably inferred

5    that the ALJ at least considered plaintiff's incontinence.  This conclusion is because the ALJ

6    specifically questioned plaintiff regarding incontinence during the hearing.  (AR 79-80 (plaintiff

7    initially testified that she lost control of her bladder "every day," then later indicated that she had

8    lost control over her bladder only "one time").)  Given the ALJ's consideration of the "entire

9    record" (AR 26) and the amount of testimony the ALJ elicited on the topic during the hearing,

10   the court reasonably infers that the ALJ considered such testimony in assessing plaintiff's RFC.

11   See Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by

12   inferences reasonably drawn from the record . . . .") (citing Gallant v. Heckler, 753 F.2d 1450,

13   1452-53 (9th Cir. 1984); e.g., LaFaelle v. Astrue, No. C09-0496-JCC, 2010 WL 1286804, at

14   *14-16 (W.D. Wash. March 25, 2010) (unpublished) (upholding ALJ's RFC assessment even

15   though it did not explicitly discuss all impairments plaintiff alleged, because the ALJ discounted

16   several medical opinions offered by plaintiff's physicians, the ALJ's decision "reflect[ed] [the

17   ALJ's] thorough consideration of the medical evidence," and where the RFC "specifically

18   accounted for many of plaintiff's concerns").  Finally, plaintiff bears the burden at step four,

19   Carmickle, 533 F.3d at 1166, and plaintiff has not cited any evidence demonstrating that her

20   incontinence was *not* alleviated by the prescribed medication (AR 163) as the record suggests, or

21   that it would functionally limit her ability to perform her past relevant work despite Dr. Tanson's

22   apparent opinion to the contrary.  The ALJ's assessment of plaintiff's RFC is supported by

23   substantial evidence.

24

25        2.   The ALJ Accounted For The "Mental Demands" Of Plaintiff's Work In
                  Assessing Plaintiff's RFC

26        Plaintiff also argues that the ALJ's finding is deficient because the ALJ failed to

                                    27

explicitly describe the physical and mental demands of plaintiff's past work and failed to make specific findings thereon.[16]  (Pl.'s Motion at 15.)  "At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as generally performed in the national economy.'"  Carmickle, 533 F.3d at 1166 (citation omitted).  "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion."  Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001).  The ALJ must make "specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work."  Id. at 845; Social Security Ruling 82-62.[17]  "A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy."  20 C.F.R. § 404.1560(b).

        Here, the ALJ's findings at step four were supported by substantial evidence.  The ALJ adopted the VE's finding that plaintiff could return to her past relevant work as an in-home attendant, but only as that work is performed in the national economy (i.e., at the "medium" exertional level) rather than as previously performed by plaintiff herself (i.e., at the "heavy" exertional level).  (AR 80-81.)  While the ALJ did not herself list all "physical and mental" demands of plaintiff's past relevant work, she expressly adopted the VE's identification of those

---

[16]  Plaintiff does not identify any inconsistency between her RFC and the DOT description of in-home attendant work; rather, plaintiff alleges only that the ALJ's findings on these issues lacked the requisite specificity.  (Pl.'s Motion at 15-16.)

[17]  Social Security rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).  Social Security Rulings and Acquiescence Rulings are "binding on all components of the Social Security Administration."  Pinto, 249 F.3d at 845 n.3 (citing 20 C.F.R. §§ 402.35(b)(1) and (2); Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984).)

demands.  (AR 30.)  The ALJ specifically explained that she accepted the VE's representation

that, as performed in the national economy, an in-home attendant's job duties require "medium,

SVP three, semi-skilled" work.  (Id.)  The VE also expressly clarified that this testimony was

"consistent with" the DOT description of "in-home attendant" work.[18]  (AR 80-83.)  Thus, when

the ALJ adopted the VE's shorthand reference to "medium, SVP three, semi-skilled" work, she

adopted the DOT's description of the mental and physical demands of an in-home attendant job

performed in the national economy.[19]  (AR 30, 80-83.)  It cannot be said that the ALJ failed to

make specific findings about plaintiff's abilities, indeed, the ALJ spent more than three pages

discussing the bases for her RFC finding, questioned plaintiff about her prior job duties during

the hearing (AR 69-70), and found plaintiff was capable of medium (but not heavy) exertional

work.  (AR 27-30.)

The ALJ's step four finding was supported by substantial evidence.  It was based

upon plaintiff's testimony about her past home health provider job (AR 69-70), the ALJ's careful

consideration of the "entire record" (AR 27), plaintiff's own documented descriptions of her

prior work (AR 113-14 (plaintiff's "Work History Report")).  See Matthews v. Shalala, 10 F.3d

678, 681 (9th Cir. 1993) (claimant's testimony about past relevant work is "highly probative").  It

---

[18]  The ALJ expressly stated that she based her decision upon VE's testimony that the requirements of the in-home healthcare attendant job performed in the national economy were consistent with plaintiff's RFC.  (AR 30-31.)

[19]  A VE's testimony may properly be based on the job classifications withing the Dictionary of Occupational Titles.  Bray, 554 F. 3d at 1230 n.3.  The court in Bray clarified that "[t]he DOT can be utilized by the ALJ and/or the VE in determining whether a claimant, given his or her residual functional capacity, can perform his or her past relevant work."  Id. (citing 20 C.F.R. § 404.1560(b)(2).)  The SSA classifications of the physical exertion requirements of various jobs as being "sedentary, light, medium, heavy, [or] very heavy" have the same meaning as in the DOT.  Id. (citing 20 C.F.R. § 404.1567.)  In designating the skill requirements of particular occupations as being "unskilled, semi-skilled, [or] skilled," the SSA also uses the materials (such as the DOT) published by the Department of Labor.  Id. (citing 20 C.F.R. § 404.1568.)  The DOT "includes information about jobs (classified by their exertional and skill requirements) that exist in the national economy."  Id. (citing 20 C.F.R. § 404.1569.)  The DOT is considered to be the "best source for how a job is generally performed."  Id. (citing Carmickle, 533 F.3d at 1166; Pinto, 249 F.3d at 845).  "The DOT creates a rebuttable presumption as to the job classification."  Id. (citing Tommasetti, 533 F.3d at 1042).

1   was also based upon the ALJ's express adoption of the VE's findings, which were "consistent

2   with" the DOT.  (AR 80-83.)  Pinto, 249 F.3d at 845-46 ("the best source for how a job is

3   generally performed is usually the Dictionary of Occupational Titles"); accord Carmickle, 533

4   F.3d at 1166.  Moreover, plaintiff has not argued that a classification other than the DOT's "in-

5   home attendant" classification should have applied to her prior work.  See LaFaelle, 2010 WL

6   1286804, at *16 (where plaintiff did not "allege any actual conflict with" the DOT classification

7   the ALJ invoked, any procedural error regarding the ALJ's determination of plaintiff's ability to

8   perform past relevant work would be harmless) (citing cases).

9          E.     Because The Undersigned Finds That The ALJ's Step Four Determination
                  Was Supported By Substantial Evidence, The Undersigned Need Not
10                Reach Plaintiff's "Step Five" Argument

11         Plaintiff argues that various failures by the ALJ led to the ALJ asking an

12  "incomplete hypothetical" question to the VE regarding plaintiff's RFC, which yielded testimony

13  from the VE regarding plaintiff's capacity to perform "other work in the national economy" at

14  step five.  (Pl.'s Motion at 17.)  The undersigned need not reach this argument, however, because

15  given the ALJ's proper step four determination that plaintiff was able to return to her past

16  relevant work as it is generally performed, the ALJ's step five analysis of plaintiff's ability to

17  perform "other work" was unnecessary.  See Matthews, 10 F.3d at 681 (holding, where plaintiff

18  "failed to show that he was unable to return to his previous job," the burden of proof remained

19  with the plaintiff, and vocational expert's testimony was "useful, but not required" and

20  concluding that any error occurred during a hypothetical the ALJ was "not required" to ask); 20

21  C.F.R. § 404.1520(f) (explaining that ALJ's inquiry is complete at step four if she finds that,

22  given the RFC, the claimant has the capacity to do her past work); 20 C.F.R. § 404.1560(b)(2)

23  (explaining that "past relevant work" may be "either as the claimant actually performed it or as

24  generally performed in the national economy").  Only if the ALJ finds that the claimant can no

25  longer perform his past work, as properly classified, does the analysis move to the fifth and final

26  step of determining whether the claimant can perform any other work that exists in the national

30

economy.  <u>Carmickle</u>, 533 F.3d at 1167.  Here, the ALJ's decision, by its own terms, was resolved at step four.  Accordingly, the court will not address plaintiff's claim that the ALJ erred in crafting an incomplete hypothetical for the VE at step five.

IV.    <u>CONCLUSION</u>

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment is denied;

2.    The Commissioner's cross-motion for summary judgment is granted; and

3.    The Clerk is directed to enter a judgment affirming the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED:  August 12, 2011

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE